***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with minor modifications.
At oral argument before the Full Commission, counsel for defendants reported that her clients had accepted the Opinion and Award by the Deputy Commissioner Gates in its entirety except for that portion dealing with sanctions for unfounded litigiousness.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties their Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Mack Molding Company, the employer, was self insured and Liberty Mutual Insurance Company was a third-party administrator.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff alleges that on February 13, 2002, he injured his back when his feet got twisted in a rubber hose and were pulled out from underneath him, causing him to fall to the ground. Defendants deny claimant sustained an injury by accident or specific traumatic incident of the work assigned arising out of and in the course of his employment.
5. Plaintiff contends the average weekly wage is $435.45, producing a compensation rate of $290.32, which was calculated by using the earning statement for the period from September 23, 2001, to February 10, 2002. Defendants contend the average weekly wage is $360.12, yielding a compensation rate of $240.01.
6. The issues for determination are:
a. Did plaintiff sustain an injury by accident or as a result of a specific traumatic incident of the work assigned arising out of and in the course of his employment on February 13, 2002, and if so, to what benefits may he be entitled under the Act?
b. What is the correct average weekly wage?
c. Is plaintiff entitled to an award of attorney's fees and costs under N.C. Gen. Stat. § 97-88.1 and Troutman v. White Simpson, Inc.,121 N.C. App. 48, 464 S.E.2d 481 (1995)?
7. The parties stipulated the following documentary evidence:
a. Accident Investigation Report, three pages;
b. Medical Records from Iredell Memorial Hospital, eight pages;
c. Medical Records from Piedmont Health Care, eleven pages;
d. I.C. Forms 18, 19, 61 and 33;
e. Medical Records from Catawba Valley Medical Center, fifteen pages;
f. Medical Records from Davis Regional Medical Center, seven pages;
g. Medical Records from Carolina Primary Urgent Care, three pages;
h. Medical Records from The Spine and Scoliosis Center, twelve pages;
i. Photographs of Plaintiff's work area at Mack Molding Company, two pages;
j. Plaintiff's Answers to Discovery, eight pages;
k. Plaintiff's personnel file from Mack Molding Company, eighteen pages;
l. Medical Records pertaining to the May 20, 1998 Injury, 95 pages;
m. North Carolina Industrial Commission Form 22, two pages;
n. Recorded Statement of Roy Keen, eleven pages; and
o. Recorded Interview of Ted Smith, six pages.
 ***********
Based upon all of the competent of record and the reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 39 years old and was employed as a spray operator with Mac Molding, a plastics and metal manufacturer. As a spray operator, plaintiff was required to wear a breathing mask attached to an air hose to protect him from contact with the paints and chemicals that he sprayed.
2. On February 13, 2002, plaintiff was wearing the breathing mask and air hose. During the course of his work activities, the air hose became tangled and wrapped around plaintiff's right leg. As plaintiff tried to kick the hose, his feet slipped out from under him causing him to fall to the floor and land on his lower back. This incident constituted a specific traumatic incident of the work assigned that occurred during the course and scope of employment.
3. Plaintiff wore tennis shoes and had paint on the bottom of his shoes at the time of the indident.
4. Supervisor Ted Smith said he did not see plaintiff fall but he did see plaintiff lying on the floor with the air hose wrapped around his right leg. Smith assisted in untangling the hose, asked plaintiff whether he was injured, and offered to send him to the hospital for emergency treatment.
5. Smith prepared the incident report, reporting he had seen plaintiff fall. Plaintiff initially declined medical treatment, thinking he would be able to walk off his discomfort. He later sought treatment at the Iredell Memorial Hospital emergency room, where he was given medication and referred to an orthopedist.
6. On February 26, 2002, the workers' compensation third-party administrator took plaintiff's recorded statement, in which plaintiff related he had fallen at work after the air hose became tangled around his right leg.
7. On February 15, 2002, plaintiff was seen by an orthopedist at Piedmont Health Care and was continued out of work. By February 27, 2002, he was diagnosed with a suspected herniated disk at L4-5.
8. On March 14, 2002, defendant-carrier filed an I.C. Form 61 Denial of plaintiff's claim, which stated as its bases, "pre-existing condition, normal MRI, did not arise out of during the course of employment, and not the result of an accident."
9. After his claim was denied, plaintiff sought treatment with orthopedic surgeon Dr. Alfred E. Geissele of The Spine and Scoliosis Center on April 17, 2002. Dr. Geissele diagnosed plaintiff with lateral recessed stenosis and lumbar radiculitis. An MRI revealed a facet enlargement of L4-5 with central lateral recess stenosis and diffuse disc protrusion, largely eccentric to the right. Plaintiff had previously treated with Dr. Geissele for a 1998 cervical spine condition, which was also the result of a workers' compensation injury.
10. Dr. Geissele ordered nerve root injections, but by May 23, 2002, he recommended surgery.
11. On June 18, 2002, Dr. Geissele performed L4 laminectomy and bilateral L4-5 medial facetectomies and foraminotomies. This procedure was necessary to provide relief for the injury which plaintiff sustained in the February 13, 2002, fall at work.
12. At the time of the hearing before the Deputy Commissioner, plaintiff had not yet reached maximum medical improvement nor had he been released to return to work.
13. Plaintiff began working for Mack Molding on September 23, 2001, and in the 20 and 4/7's weeks of employment, he earned $8,273.60.
14. Defendants' initial basis for denying the claim was that plaintiff's injury was a result of a pre-existing condition that did not occur on the job. This was based on the fact that plaintiff had suffered an injury to the cervical spine back in 1998 and had received a cervical fusion in 2000. The cervical disc surgery was performed in 2000, and plaintiff had returned to work and had worked approximately six months for Mack Molding before slipping and falling and injuring his lower back. The fact that plaintiff may have had degenerative disc disease in his entire spine clearly does not make this injury pre-existing. Plaintiff had worked for several years for another employer and for six months with Mac Molding after having the neck fusion surgery and the current injury is tohis lower back. To rule out any causation issue, plaintiff's counsel sent all of the medical records for the May 20, 1998, injury, the subsequent 2000 cervical fusion, and plaintiff's previous medical records related to the accident in question to Dr. Geissele in a letter dated May 29, 2002. Dr. Geissele responded to plaintiff's counsel on June 5, 2002 with a decisive and definitive statement of causation. Dr. Geissele stated:
 I do not find any indication that during treatment for his previous medical problem that plaintiff manifested any difficulty with his lower back. Overall, to clarify the point clearly, it would be my conclusion that his injury of 2/13/02 is a new and independent injury which has no relationship to the pre-existing injury of 5/20/98 (emphasis supplied).
15. Once defendants had received the June 5, 2002, letter of Dr. Geissele, they had no reasonable ground to continue denying the claim. That letter clearly showed that the injury to the lower back on February 13, 2002, was not related to the cervical back injury of May 20, 1998. As to defendants' position that there had been no specific traumatic incident, Mack Molding's supervisor, Ted Smith, was very near plaintiff when plaintiff fell and injured his back on February 13, 2002. Although Smith did not see plaintiff fall, there was no other reasonable explanation for plaintiff's being on the floor with an air hose wrapped around his leg and complaining of pain to his lower back. Under the circumstances, it was not reasonable for Mack Molding to take the position that the fall did not occur simply because there had been no similar falls involving air hoses. Defendants' assertion that the MRI was normal was also unfounded.
16. The Full Commission finds plaintiff's testimony and evidence to be fully credible. There are no credibility issues surrounding plaintiff's account of the accident. The only credibility issues are with regards to the defendants' witnesses Ted Smith and Tawana Lawrence, and as to those, the Full Commission finds both not to be credible with respect to their denial of plaintiff's specific traumatic incident. Therefore, there were no reasonable grounds upon which to defend against plaintiff's claim.
17. As a direct result of defendants' unfounded litigiousness in continuing to deny this claim and refusing to pay for plaintiff's medical treatment and temporary total disability compensation until after the Opinion and Award of the Deputy Commissioner was filed, plaintiff's car and truck were repossessed and he suffered other economic hardship. As plaintiff testified:
 I've lost my truck, I've lost my car. We've spent every dime we had. We were in the process at that time trying to buy a house and haven't been able to buy my house now. My credit is ruined now because of this, and I guess the worst thing is Christmas. The church — our church had to buy my kids' Christmas presents. Yeah, I've — I'd say I've suffered a lot.
18. This appeal was brought by the employer, and by this Opinion and Award the Full Commission orders the compensation be paid or continued in behalf of plaintiff. The Full Commission finds that the reasonable cost to plaintiff of defending this appeal is $1,000.00.
 ***********
Based upon the foregoing findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by specific traumatic incident of the work assigned arising out of and in the course of the employment on February 13, 2002. N.C. Gen. Stat. § 97-2(6).
2. The method of calculating plaintiff's average weekly wage that is fair and just to the parties is to divide the earnings by actual number of weeks worked. N.C. Gen. Stat. § 97-2(5). Based upon this method, plaintiff's average weekly wage is $402.22, which yields a compensation rate of $268.16.
3. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $268.16 per week for the period from February 13, 2002 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-2(19).
5. Plaintiff is entitled to have defendants pay his reasonable attorney's fees directly as a sanction, pursuant to N.C. Gen. Stat. § 97-88.1. The carrier erred in completing the Form 61 denial of the claim by writing that plaintiff's MRI was normal and that there had been no accident. Such denial constitutes stubborn, unfounded litigiousness. N.C. Gen. Stat. § 97-88.1. In view of the economic harm suffered by plaintiff as result of defendants' unfounded litigiousness, it is appropriate that defendant pay all of plaintiff's attorney fees in connection with this matter. N.C. Gen. Stat. § 97-88.1.
6. It is appropriate that defendant also be required to pay the reasonable cost of plaintiff's defense of defendants' appeal, which the Full Commission finds to be $1,000.00. N.C. Gen. Stat § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation to plaintiff at the rate of $268.16 per week for the period February 13, 2002, and continuing until further Order of the Commission. The portion of said compensation that has accrued shall be paid in a lump sum. Defendants shall pay interest at the rate of 8% per year from March 6, 2003.
2. Defendants shall pay directly to plaintiff's counsel a reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to plaintiff in paragraph 1 above as a sanction for their unfounded litigiousness in denying this claim. Defendants shall continue to pay directly to plaintiff's attorney every fourth check as an ongoing sanction, until further Order of the Commission.
3. Defendants shall pay medical expenses incurred or to be incurred, in accordance with the provisions of the Act.
4. As plaintiff has not reached maximum medical improvement, this Opinion does not address this issue. However, in the event that the parties should be unable to agree on the amount of permanent partial disability compensation which may be due plaintiff, either party may request a hearing before the Deputy Commissioner.
5. Defendants shall pay the costs.
This 24th day of November 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER